## THE WYOMISSING.

### (Circuit Court of Appeals, Second Circuit. March 14, 1916.)

### Nos. 207, 208.

COLLISION ☞71(2)—TOW AND VESSELS AT DOCK—LONG TOW.

A tug with a tow of 30 boats and a helper, the tow being 1,000 feet long, *held* in fault for a collision between some of the boats and equipment scows of a dredge lying at a pier at Elizabethport. The dredge, which was at work under a government contract requiring it to move if it should obstruct the channel so as to impede the passage of vessels, *held* not in fault because it did not move; there being an unobstructed channel 400 feet wide, through which the tow could have passed safely if properly navigated.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 101; Dec. Dig. ☞71(2).]

Appeals from the District Court of the United States for the Eastern District of New York.

Suits in admiralty for collision by Albert E. La Veck, owner of the barge Goldie, and John H. Flannery, owner of the barge Mary F. Flannery, against the tug Wyomissing, the Philadelphia & Reading Railroad Company, claimant, with the Morris & Cumings Dredging Company impleaded. Decree against the Wyomissing, and her claimant appeals. Affirmed.

Armstrong, Brown & Purdy, of New York City (P. M. Brown, of New York City, of counsel), for appellant.

Everett, Clarke & Benedict, of New York City (A. Leo Everett, of New York City, of counsel), for appellee Morris & Cumings Dredging Co.

James J. Macklin, of New York City (Frank V. Barns, of New York City, of counsel), for appellees La Veck and Flannery.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. March 13, 1914, at night, the tug Wyomissing started from Port Reading with a tow of seven tiers of loaded boats, four in a tier, and two light boats tailing on, bound to New York. The length of the tow was about 1,000 feet. The helper tug Pencoyd, on the starboard side at the end of the tow, assisted it through the draw of the Baltimore & Ohio bridge across the Arthur Kill on the Staten Island side. The tide was flood and the night dark, but clear. From the bridge to a point at or near Elizabethport the tide runs comparatively true, but a tow rounding the point known as Holland Hook or Dooley's Point on the Staten Island side on the flood tide is swung toward the New Jersey side. At about 9 p. m. the tow reached this point. The width of water is about 600 feet and of deep channel about 400 feet. The Morris & Cumings Company's dredge No. 7 was at work day and night under a contract with the government deepening the channel. The government laid out eight cuts lengthwise of the stream about 1,000 feet long and 50 feet wide, numbered 1 to 8, be-

ginning at the Staten Island side. The dredge was in the second cut from the Staten Island shore, and had, as was required, the mud scow on her starboard or New Jersey side, leaving some 400 feet of unobstructed water between the scow and that shore. There lay at the Iron dock at Elizabethport, at a point 1,000 feet east of the dredge, in single file, beginning at the east end equipment of the Dredging Company as follows: Light scow C–22, light scow M–52, the tug Bismarck, the tug Wister, and loaded scow 51. When the tow began to swing, the Pencoyd left the starboard side to go over to the port side and shove the tail of it away from the Iron dock, but before she could get in position the outside port boat of the sixth tier rubbed against scow 52, followed by the barge Goldie, the outside port boat of the seventh tier, and the barge Mary F. Flannery tailed on behind her.

Libels were filed by the owners of these two barges to recover the damages sustained by them against the tug Wyomissing, whose claimant brought in the Dredging Company under the fifty-ninth rule. Judge Veeder found the Wyomissing solely at fault and we concur with him.

The chief charge against the Dredging Company is that upon the approach of the tow the dredge did not move nearer the Staten Island shore. The company's contract with the government contains the following clause:

"26. *Obstructions—Navigation.* The contractor will be required to conduct the work in such a manner as to obstruct navigation as little as possible, and at the completion of the work shall remove his plant, including rangers and buoys, piles, etc., placed by him under the contract, in navigable waters. In case the contractor's plant so obstructs the channel as to impede the passage of vessels, it shall promptly be so moved as to afford a practicable passage on the approach of any vessel."

This clause is not to be construed as requiring the dredge to move for every vessel that approaches, but only that she leave enough space for vessels navigating properly to pass. The dredge was rightfully where she was at work, and her necessary equipment was lying rightfully at the Iron dock. The work of deepening the channel of necessity somewhat reduced the width of the waterway. The Wyomissing was bound to take notice of this situation, and if her tow had been shorter, or if with her then tow she had employed an additional helper, or if the one helper had acted more promptly, we are satisfied that it would have passed safely. There is a dispute as to whether the dredge actually did move, about which the District Judge made no finding. If we assume that she did not, there was, as he found, unobstructed water enough for the tow to have navigated in safety, had she been adequately supplied and handled.

The decree is affirmed.